**WALLING, Adm'r, Wage and Hour Division, U. S. Department of Labor, v. FREIDLIN et al.**

No. 2521.

District Court, M. D. Pennsylvania.

July 12, 1946.

William S. Tyson, Solicitor, of Washington, D. C., Ernest N. Votaw, Regional Atty., of Philadelphia, Pa., and Morris E. Yaraus, Senior Atty., of Woonsocket, R. I., U. S. Department of Labor, for plaintiff.

Nogi, O'Malley & Harris, of Scranton, Pa., for defendants.

WATSON, District Judge.

This case is before the Court upon a complaint by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin the defendants from violating Sections 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and upon the defendants' answer thereto. A stipulation was entered into, and the case is now ready for disposition.

The complaint alleges that defendant Isidore Freidlin and defendant Joseph Freidlin are partners, doing business under the name of Imperial Rug Company in the City of Scranton, where they are engaged in the production, sale and distribution of rag rugs; that homeworkers are employed in operations consisting mainly in the winding of cotton rags into long strips which are wound into balls and returned to the defendants for manufacture into rugs; that defendants purchase and transport raw materials in interstate commerce; and that the defendants are engaged in the production of goods for interstate commerce with their homeworker employees performing activities necessary to the production of goods for interstate commerce. Plaintiff contends that these allegations are sufficient to bring the defendants within the Act.

Specifically, plaintiff requests an injunction: (1) restraining defendants from violating Section 15(a) (2) requiring compliance with Section 6 setting minimum wages at 40 cents an hour and one and

one-half times the regular rates for hours worked per week over 40; (2) restraining defendants from violating Section 15 (a) (1) prohibiting transportation in interstate commerce of goods produced by employees employed in violation of Sections 6 and 7 of the Act; and (3) directing the defendants to keep records as required by Sections 11(c) and 15(a) (5) of the Act.

The period covered by the complaint commences January 10, 1945, and it is alleged that the violations are still continuing. Defendant Joseph Freidlin in his answer alleges, and he is not contradicted, that he withdrew from the partnership business on April 20, 1945, and ceased to be an employer from that date. This fact is conceded by the plaintiff.

### Discussion.

The crux of this case is the position of several hundred homeworkers paid by the defendants in their course of business. If the homeworkers fall within the classification of "employees" of the defendants, the defendants have agreed that there have been violations of the sections mentioned above, and that an injunction in accordance with the prayer of the complaint may be entered.

Excerpts and abridgments from Paragraph 8 of the stipulation entered into between the parties show the operations of the homeworkers to be as follows: Bales of rags weighing about 800 pounds are delivered to the homeworker, delivery being made by defendants' truck drivers from defendants' trucks. The homeworkers are paid from 7 to 15 cents per pound to cut, sew and wind these waste rags into balls of several pounds. The homeworker sorts the rags, cuts, tears, and prepares them into strips of proper width, sews the strips together, winding them into balls, which are then returned to the factory by the same medium, defendants' trucks and drivers, as they were delivered to the homes. These truck drivers deliver checks in payment of wages for work performed and delivered to the truck drivers at some prior time.

The method of arriving at the amount due was stipulated as follows: The collector picks up the work from a homeworker, weighs the rags, notes the poundage in the homeworker's handbook, and then arrives at the number of hours worked in a number of cases by dividing the total piece work earnings of the homeworker by 40 cents, the minimum wage prescribed by the Act. Thus, the hours entered in those cases do not represent the actual hours spent by the worker.

It is apparent that the Court has jurisdiction, the stipulation setting forth that the homeworkers are engaged in the production of goods for interstate commerce, and also that the materials used are shipped to Scranton to interstate commerce.

Plaintiff has argued that the case of Walling v. Todd, D.C., 52 F.Supp. 62, decided by Judge Johnson in this district, which held that a homeworker was an independent contractor and not subject to the provisions of the Act, is no longer controlling and should no longer be followed. The Todd holding was based upon three decisions. The first, Walling v. American Needlecrafts, Inc., D.C., 46 F.Supp. 16, 17, was subsequently reversed, Walling v. American Needlecrafts, Inc., 6 Cir., 139 F.2d 60, 64. While it is true that the Circuit Court of Appeals in the Needlecrafts case said, "We find it unnecessary to determine whether all homeworkers come within the purview of the Act, but are compelled by the scope of its definition of the term 'employee' to hold that the workers here considered are within its protection.", that case was similar to the case at bar and should be of great weight here. The case of Kentucky Cottage Industries, Inc., v. Glenn, D. C., 39 F.Supp. 642, was decided prior to the Needlecrafts case and by the same District Judge. It is apparently overruled by the decision in the Needlecrafts case. The third case cited in the Todd decision was Bowman v. Pace Co., 5 Cir., 119 F.2d 858. The United States Circuit Court of Appeals in the Needlecrafts decision declared that Bowman v. Pace was of no assistance in determining the status of the homeworker under the Act.

Having disposed of the negative side of the question, the Court feels that there is ample authority, though the Needlecrafts case is closest in point and probably sufficient in itself, to determine that the work-

ers in the case at bar were "employees" within the meaning of the Act. There are cases too numerous for account here in which the general attitude of the Courts has been to refuse to allow employers to evade the provisions of the Act by the formulation of contracts which effect no real alteration in the simple economic facts which are material to its application. In many cases the "employer" attempted to establish through a contract with the "employee" the status of an independent contractor or as one without any obligation to the "employer." It is relevant that no such "independent" contracts were in effect with the homeworkers in the case at bar. The Court's position may be summed up by excerpts from the opinion of the Supreme Court in National Labor Relations Board v. Hearst Publications, Inc., 322 U. S. 111, 129, 64 S.Ct. 851, 860, 88 L.Ed. 1170. "That term ("employee"), like other provisions, must be understood with reference to the purpose of the Act and the facts involved in the economic relationship. 'Where all the conditions of the relation require protection, protection ought to be given.'"

It is, therefore, my opinion that I must decline to follow the reasoning set forth in the Todd case and follow the weight of authority in finding that the homeworkers employed by the Defendants are in fact "employees" within the meaning of the Act.

## Findings of Fact.

1. Defendant Joseph Freidlin, since on or about August 20, 1945, has ceased to be a partner with defendant Isidore Freidlin, doing business as Imperial Rug Company, under the facts stipulated.

2. Defendants have used and are using raw materials acquired through interstate commerce and have engaged and are engaged in the production, sale, and distribution of rag rugs in interstate commerce.

3. Homeworkers who were paid by the defendants for work accomplished were not paid at the rate of forty cents an hour, minimum wage, and at the rate of one and one-half times the regular rate for hours worked in excess of 40, under the Fair Labor Standards Act of 1938 and Wage Orders, for the Textile Industry, duly issued by the Administrator of the Wage and Hour Division, United States Department of Labor.

4. The work product of such homeworkers was used in the interstate business of the defendants.

5. Defendants violated Sections 6 and 7 of the Act regarding minimum wages and maximum hours of employment by which transportation, delivery or sale of the goods thus produced in interstate commerce is prohibited.

6. The defendants failed in many respects, and refused to make, keep, and preserve as prescribed by the regulations (Title 29, Chapter V., Code of Federal Regulations, Part 516) adequate records of persons employed by them as homeworker-employees and of the wages, hours, and other conditions and practices of employment maintained by them.

## Conclusions of Law

1. This Court holds that the homeworkers in this case come within the term "employees", as used by the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

2. The case of Walling v. Todd, D.C., 52 F.Supp. 62, is not followed and is no longer the law in this district.

Now, July 12, 1946, defendants, Isidore Freidlin and Isidore Freidlin, doing business as Imperial Rug Company, their agents, servants, employees, and attorneys, and all persons acting or claiming to act in their behalf and interest are hereby enjoined and restrained; (1), from transporting, offering for transportation, shipping, delivering, or selling in commerce, or doing those acts with knowledge that shipment, delivery or sale in commerce is intended, any goods in the production of which any employee was employed in violation of Section 6 or Section 7 of the Fair Labor Standards Act of 1938, or in violation of any regulation or order of the Administrator issued under Section 14 of the Act; and (2), from violating any of the provisions of Section 6 or Section 7 of the Act, or any of the provisions of any regulation or order of the Administrator issued under Section 14 of the Act; and

(3), from violating any of the provisions of Section 11(c) of the Act requiring the employer to make, keep, and preserve records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary for the enforcement of the Act or the regulations or orders thereunder.