**LAWSON v. CREELY et al.**

**DUVALL v. CREELY et al.**

No. 28795.

St. Louis Court of Appeals.

Missouri.

May 18, 1954.

Philip A. Foley, Clayton, for appellant.

Miller & Landau, St. Louis, for respondents.

ANDERSON, Presiding Judge.

Emil R. Lawson and Donald L. Duvall, judgment creditors of John J. Creely, instituted two separate garnishment proceedings against Midwest Insurance Company. The issues being identical, said actions were, by stipulation of the parties, tried together. The trial resulted in separate judgments against said garnishee. From said judgments, the garnishee has appealed.

During the year 1950 defendant John J. Creely operated a taxicab business under the name of Wellston Taxicab Service. On May 19, 1950, one of defendant's taxicabs collided with another automobile on St. Charles Road in St. Louis County. In the other automobile were three sailors— Emil R. Lawson, Donald L. Duvall, and John Gooch. Subsequently, plaintiff Emil R. Lawson filed suit for personal injuries against John J. Creely and thereafter obtained a judgment against said defendant in the sum of $3,500.

Defendant, John J. Creely, filed an attachment suit against Donald L. Duvall for the damage to his taxicab which resulted from said collision. The suit was filed in a Magistrate Court in St. Louis County. In said suit Duvall filed a counterclaim for damages for personal injuries. Thereafter, Creely dismissed his cause of action, and the cause was tried on Duvall's counterclaim, resulting in a judgment thereon against Creely in the sum of $800. An appeal was taken by Creely from said judgment to the Circuit Court of St. Louis County. When the cause came on for trial in the circuit court no one appeared for Creely, and the judgment of the Magistrate was affirmed.

No appeal was taken from either of the circuit court judgments, nor did defendant Creely make any payments on same. Thereafter, executions were issued on said judgments and, in aid thereof, a writ of garnishment was in each case served on the Midwest Insurance Company. Said writs were served by delivering copies thereof to the Deputy Superintendent of the Insurance Department of the State of Missouri, said company being a nonresident of the State and not licensed to do business in Missouri.

Plaintiffs thereafter filed interrogatories directed to said garnishee, calling for a disclosure of any indebtedness owed by it to defendant Creely; also whether it was bound by contract to indemnify said defendant by reason of any judgment rendered against him on account of the operation of the taxicab involved in the accident. Garnishee's answers to the interrogatories were all in the negative.

Each plaintiff thereafter filed his denial of garnishee's answer. Both denials were identical. Each alleged that on and prior to January 11, 1950, defendant was engaged in the operation of a taxicab business in the City of Wellston under the trade name of Wellston Taxicab Service; that one of the automobiles so operated was a certain 1947 Packard Sedan, Motor No. F 41534; that under the laws of the City of Wellston defendant was required to keep filed with the municipal authorities a policy of liability insurance for the protection of

the general public and indemnifying said defendant against claims for liability arising out of the operation of said automobile; that on or about January 11, 1950, said garnishee issued to defendant its policy of liability insurance, being Policy No. A82–1221, under which it agreed to indemnify defendant against claims arising out of the operation of said automobile in the sum of $5,000 for personal injuries to any individual claimant, and in the total sum of $10,000 for personal injuries arising out of a single casualty; that said policy was duly posted with the proper authorities of Wellston; that said policy was issued either on January 11, 1950, or February 1, 1950, and was in full force and effect on May 19, 1950; and that on May 19, 1950, plaintiff Lawson and his two companions were injured when the automobile in which they were riding collided with said Packard Sedan while the same was being operated as a taxicab by one of defendant's drivers in the regular course of the operation of defendant's taxicab business. Each denial then alleged the facts with reference to the institution of the particular plaintiff's suit, the rendition of judgment therein, the failure of defendant to appeal from said judgment, and the fact that the judgment remained unsatisfied. There was a prayer for judgment in each case for the amount of the judgment in the damage suit, together with interest and costs.

The reply of the garnishee to plaintiffs' denial was a general denial.

The alleged policy was not produced by either of the plaintiffs at the trial below, but the existence of same and the terms thereof were sought to be established by secondary evidence. On this appeal appellant contends it was error to admit this secondary evidence for the reason that the best evidence was available. An examination of the record discloses that there is no merit to this contention.

Briefly, the evidence discloses that in the early part of January, 1950, an agent of the Midwest Insurance Company named Landwehr sold to defendant a policy of liability insurance covering the operation of automobiles employed by the Wellston Taxi Service. After the policy was executed it was forwarded to the defendant. The defendant was placed on the stand by the plaintiffs and testified that he did not have the policy and did not know what had become of it. Defendant stated that after being subpoenaed and ordered by the court at a previous hearing to bring the policy into court, he went to Wellston "and they looked through their files and they couldn't find any policy. They found a couple of policies, but not from the Midwest; policies I bought later." Defendant testified that he paid all the premiums due on said policy. The agent, Landwehr, testified that he did not know the whereabouts of the policy.

The secondary evidence offered consisted of a photostatic copy of the "Agent's Daily Copy" and numerous other written documents. An "Agent's Daily Copy" is a copy of portions of a policy issued, showing the principal terms of the contract. In the case at bar there is no contention that the evidence offered, if admissible, failed to sustain the allegations in plaintiffs' pleadings—the sole contention being that no proper foundation was laid for the admission of secondary evidence.

Appellant makes the point that before resorting to secondary evidence an attempt should have been made to secure the policy for use at the trial by serving the garnishee with a subpoena duces tecum commanding the production of said policy before the court. It is urged that this could have been done under Section 375.-160 RSMo 1949, V.A.M.S. We fail to see how the original policy could have been brought into court in this manner. Section 375.160, supra, is a statute providing for service of process on insurance companies not authorized to do business in this state. It makes the Superintendent of Insurance the true and lawful attorney of such company for that purpose and no other. Clearly, such company could not under said section be compelled to obey the mandate of a subpoena served upon such officer. Furthermore, there is nothing in the record to show that the garnishee had possession

of the policy. On the contrary, it appears that the company parted with possession of it shortly after its execution, when it was delivered to defendant. There is no intimation that said garnishee thereafter regained possession of the policy. In our judgment, there was a proper foundation laid for introduction of the secondary evidence in this case. Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001.

The judgments appealed from are affirmed.

BENNICK, J., and ADAMS, Special Judge, concur.